J-S13033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.J. A/K/A S.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M., MOTHER | |
| | No. 3148 EDA 2016 |

Appeal from the Order Entered September 2, 2016
in the Court of Common Pleas of Monroe County Orphans' Court
at No(s): 30 O.C.A.2016

BEFORE: BENDER, LAZARUS, and FITZGERALD,<sup>*</sup> JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MARCH 20, 2017**

J.M. ("Mother") appeals from the order of the Court of Common Pleas of Monroe County that involuntarily terminated her parental rights to her daughter, S.J. a/k/a S.M. ("Child"), born in December 2013.[1]  We affirm.

We adopt the trial court's recitation of the factual and procedural history of this case, which the testimonial evidence supports.  **See** Trial Ct. Op., 11/8/16, at 1-8.   On July 28, 2016, Monroe County Children and Youth Services ("CYS") filed a petition for the involuntary termination of Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (8), and (b).  A hearing occurred on September 1, 2016, during which CYS presented

---

[*] Former Justice specially assigned to the Superior Court.

[1] By order dated October 28, 2015, the trial court involuntarily terminated the parental rights of Child's father, K.J.  Trial Ct. Op., 11/8/16, at 5.  K.J. is not a party to the instant appeal.

the testimony of its caseworker, Jennifer Payne. Mother was present for the hearing and represented by counsel, but she presented no evidence.

On September 2, 2016, the trial court terminated Mother's parental rights. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on November 8, 2016.

On appeal, Mother presents the following issues for our review:

1. Did the [trial court] err and/or abuse its discretion in concluding that clear and convincing evidence was presented that [Mother] either evidenced a settled purpose of relinquishing parental claim to a child, or refused or failed to perform parental duties?

2. Did the [trial court] err and/or abuse its discretion in finding that clear and convincing evidence was presented that [Mother]'s repeated and continuing incapacity, abuse, neglect or refusal caused the child to be without [essential] parental care, control or subsistence necessary for the child's physical and mental well-being, and in finding that the conditions and the cause of the inability, abuse, neglect or refusal had not been remedied by the parent when [Mother] had remedied most of the conditions and causes of the alleged inability, neglect or refusal to parent?

3. Did the [trial court] err and/or abuse its discretion in finding that clear and convincing evidence had been presented that the conditions which led to the removal or placement of the child [ ] continue to exist?

4. Did the [trial c]ourt err and/or abuse its discretion in finding that clear and convincing evidence had been presented that termination of parental rights would best serve the needs and welfare of the child?

- 2 -

5. Did the [trial court] err and/or abuse its discretion in concluding that clear and convincing evidence was presented that [Mother]'s parental rights would serve the developmental, physical and emotional needs and welfare of the child?

Mother's Brief at 7.

We review Mother's appeal according to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the

standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.*

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(8) and (b), which provides as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> ***
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

The following factors must be demonstrated when seeking termination under Section 2511(a)(8):

(1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

"Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the twelve-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the agency supplied over a realistic period. *Id.* "[T]he relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009) (citation omitted).

With respect to the "needs and welfare" analysis pertinent to Section 2511(a)(8) and (b), we have observed:

[I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on

the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1008–1009 (Pa. Super. 2008) (*en banc*) (citations omitted).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

Mother, in her third and fourth issues,[2] claims that CYS did not meet its burden of proof under Section 2511(a)(8). Specifically, Mother argues that, "the condition which led to [Child's] dependency, [her] alleged drug use, does not continue to exist."[3] Mother's Brief at 19. In addition, Mother asserts that she "maintains a bond with her child." *Id.* at 20. She asserts that, "[u]ntil it is determined how long Mother will be incarcerated, and given her past ability to achieve her necessary goals[,] it is too soon to determine that [Child's] best interest[s] are served by terminating Mother's parental rights." *Id.* We disagree.

There is no dispute that Child was born addicted to cocaine and opiates and placed in emergency protective custody immediately after birth.

---

[2] Mother's first two arguments focus on separate subsections of Section 2511(a). *See In re B.L.W.*, 843 A.2d at 384.

[3] In her brief, Mother combines her arguments regarding Child's "needs and welfare" pursuant to Section 2511(a)(8) and (b). Nevertheless, we consider arguments separately. *See In re Adoption of C.L.G.*, 956 A.2d at 1009 ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the 'needs and welfare' of [the child], as proscribed by Section 2511(b). . .").

Moreover, Mother cites Section 2511(a)(5) in arguing that CYS failed to prove that the conditions which led to the removal or placement of Child continue to exist. *See* Mother's Brief at 19. Because the trial court did not terminate Mother's parental rights pursuant to Section 2511(a)(5), Mother's citation is erroneous. However, we recognize that termination under both Section 2511(a)(5) and (8) requires evidence that the conditions which led to the child's removal or placement continue to exist, and, therefore, we consider her argument.

Trial Ct. Op. at 2; N.T., 9/1/16, at 6. Mother continued to test positive for illegal substances and alcohol until her incarceration on May 13, 2014.[4] Trial Ct. Op. at 3; N.T. at 9. Mother was released from prison on August 11, 2014, but she was arrested and incarcerated again on April 7, 2015, "for possession with intent to deliver heroin and crack cocaine after two drug buys were conducted at her home." Trial Ct. Op. at 4; N.T. at 18. Mother was released from prison on October 20, 2015.

Thereafter, on January 11, 2016, Mother's probation officer notified CYS that Mother tested positive for cocaine, and that there was a warrant issued for her arrest. Trial Ct. Op. at 7; N.T. at 22-23. The trial court further noted "Mother absconded until she was arrested again for Possession with Intent to Deliver in July of 2016." Trial Ct. Op. at 7; N.T. at 23. At the time of the subject proceedings, Mother was in prison and requesting to plead to the charges with immediate sentencing. *See* Trial Ct. Op. at 7; N.T. at 29.

Based on these findings by the trial court we discern no abuse of discretion by the court in concluding that CYS proved by clear and convincing evidence that the conditions that led to Child's placement,

---

[4] This incarceration resulted from Mother's arrest in September of 2013, two months before Child's birth, for, "among other things, possession of heroin and endangering the welfare of children, and events that led to revocation of an ARD [Accelerated Rehabilitative Disposition] that Mother had received for a prior Driving under the Influence arrest." Trial Ct. Op. at 2 (citations to record omitted).

namely, Mother's drug addiction, continue to exist. The court's findings were supported by the record and evince no manifest unreasonableness.

Similarly, the trial court's findings that terminating Mother's parental rights would best serve the needs and welfare of Child under Section 2511(a)(8) were supported by the record and reveal no abuse of discretion. The court found that, upon her release from prison on October 20, 2015, Mother initially participated in weekly supervised visitation with Child. Trial Ct. Op. at 7; N.T. at 22. However, Mother's last visit with Child was on December 29, 2015, and Mother was "on the run" from the warrant issued for her arrest. Trial Ct. Op. at 7; N.T. at 22-23. By the time of the subject proceedings, Child was more than two and one-half years old, and "Mother had not seen or even attempted to visit [Child] in eight months. . . ." Trial Ct. Op. at 7; *See* N.T. at 27. Further, Mother was incarcerated for the third time in Child's short life and awaiting sentencing. N.T. at 29. As such, reunification between Mother and Child was not imminent at the time of the hearing.

In addition, Ms. Payne testified that CYS transferred Child to a new foster home, one where her half-sibling resides, on April 28, 2015, and that this is a pre-adoptive resource. N.T. at 19, 32. The court heard evidence that Child is thriving in the home, "is bonded with and shows love and affection for everyone in the home." Trial Ct. Op. at 7-8; N.T. at 31. Based on the foregoing, we conclude that CYS met its burden of proof pursuant to

Section 2511(a)(8). As such, Mother's third and fourth issues on appeal warrant no relief.[5]

We next review Mother's assertion that CYS failed to satisfy its burden of proof pursuant to Section 2511(b). This Court has explained as follows.

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." As we explained in *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010),
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (some citations omitted).

Moreover, our Supreme Court stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268 (citation omitted). The *T.S.M.* Court directed that, in weighing the bond considerations pursuant to Section

---

[5] Based on this disposition, we need not review Mother's first and second issues on appeal relating to Section 2511(a)(1) and (2). *See In re B.L.W.*, 843 A.2d at 384.

- 10 -

2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

Instantly, there is no evidence of record that a parent-child bond exists between Mother and Child. Therefore, it was reasonable for the trial court to infer that none exists. ***See In re K.Z.S.***, 946 A.2d at 762-63***.*** Rather, the evidence demonstrates that Child is bonded to her foster mother, who is a pre-adoptive resource. N.T., at 30-32.

Further, the trial court found as follows:

> [Child] needs and deserves permanency, stability, love, court, and parental care. Her needs have not been met by Mother. Mother stopped visiting after December 2015, and others, especially foster mother, have provided parenting for [Child] while Mother did not. Moreover, nothing in the record suggests that Mother will be able to meet [Child's] needs in the future, especially since as of the [subject proceedings] Mother was awaiting sentencing on her latest drug charge. The overwhelming evidence supports termination of her parental rights on the grounds asserted by CYS.

Trial Ct. Op. at 25. Upon careful review, we agree with the court. Indeed, the testimonial evidence supports the court's conclusion that involuntarily terminating Mother's parental rights serves the developmental, physical and

emotional needs and welfare of Child under Section 2511(b).[6]  Accordingly,

we affirm the order.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017

---

[6] We further observe that the Guardian *Ad Litem* argued in support of the involuntary termination of Mother's parental rights during the subject proceedings.  *See* N.T. at 43-45.